**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

JOSÉLUIS ALCANTAR, on behalf of
himself and all others similarly
situated,

*Plaintiff-Appellant*,

v.

HOBART SERVICE; ITW FOOD
EQUIPMENT GROUP, LLC,

*Defendants-Appellees*.

No. 13-55400

D.C. No.
5:11-cv-01600-
PSG-SP

OPINION

Appeal from the United States District Court
for the Central District of California
Philip S. Gutierrez, District Judge, Presiding

Argued and Submitted
June 3, 2015—Pasadena, California

Filed September 3, 2015

Before: Milan D. Smith, Jr. and N. Randy Smith, Circuit
Judges and Joan Humphrey Lefkow,[*] Senior District Judge.

Opinion by Judge Lefkow;
Partial Concurrence and Partial Dissent by Judge N.R.
Smith

---

[*] The Honorable Joan Humphrey Lefkow, Senior District Judge for the
U.S. District Court for the Northern District of Illinois, sitting by
designation.

## SUMMARY[**]

### Labor Law / Class Certification

The panel affirmed in part, and reversed and remanded in part, the district court's orders denying class certification and granting partial summary judgment in an action brought by a putative class of service technicians, alleging violations of California Labor Code § 1194 and derivative claims under California's Unfair Competition Law and Private Attorney General Act.

The district court denied plaintiff's motion for class certification because plaintiff failed to satisfy the commonality requirement of Fed. R. Civ. P. 23(a)(2) and the predominance requirement of Fed. R. Civ. P. 23(b)(3). Addressing the commonality requirement and plaintiffs' commute-time claim, the panel held that the district court erred in denying class certification because it evaluated the merits rather than focusing on whether the questions presented – meritorious or not – were common to the class. Addressing the predominance requirement and plaintiff's meal- and rest-break claim, the panel held that the district court did not abuse its discretion in concluding that the proposed class failed under Fed. R. Civ. P. 23(b), where the district court held that questions as to why service technicians missed their meal and rest breaks would predominate over questions common to the class.

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

The panel reversed the district court's summary judgment in favor of the employer on plaintiff's commute-time claim because there was a genuine dispute of material fact as to whether technicians were required to commute in the employer's vehicles.

The panel affirmed the district court's summary judgment in favor of the employer on plaintiff's Private Attorney General Act claim because the letter in which plaintiff disclosed his allegations against the employer did not contain sufficient facts to comply with the statute's notice requirements.

Judge N.R. Smith concurred in the majority's rejection of plaintiff's contentions regarding the denial of class certification on his meal break claim and the grant of summary judgment to the employer on his Private Attorney General Act claim. Judge N.R. Smith dissented in part, and would hold there is no genuine issue of material fact on the commute time claim, and he would not remand the case.

---

### COUNSEL

Robin G. Workman (argued), Daniel H. Qualls, and Aviva N. Roller, Qualls & Workman, LLP, San Francisco, California, for Plaintiff-Appellant.

Thomas E. Hill (argued) and Mara D. Matheke, Reed Smith LLP, Los Angeles, California, for Defendants-Appellees.

---

## OPINION

LEFKOW, Senior District Judge:

Joséluis Alcantar wishes to represent a class of service technicians in his suit against his employer, Hobart Service ("Hobart"), and its parent company, ITW Food Equipment Group ("ITW"). Alcantar alleges that Hobart did not compensate its technicians for the time they spent commuting in Hobart's service vehicles from their homes to their job sites and from those job sites back home. Alcantar also alleges that Hobart failed to provide its technicians with meal and rest breaks.

Alcantar appeals from the district court's denial of class certification and its grant of partial summary judgment, as well as its determination that Alcantar did not comply with the notice requirements of California's Private Attorneys General Act ("PAGA"). We have jurisdiction under 28 U.S.C. § 1291. We affirm the judgment in part and reverse and remand in part.

## BACKGROUND

### I. Factual Background

ITW, Hobart's parent company, designs and manufactures commercial food equipment. Hobart provides after-sale maintenance and repair services to ITW's customers. Alcantar works for Hobart as a service technician.

Alcantar and other service technicians provide most services on-site. They drive to and from customer locations in vehicles Hobart provides, carrying the tools and

replacement parts necessary to make repairs. Although they spend most of their time at customer locations, each technician is assigned to one of Hobart's thirteen California branch offices.

As hourly employees, the technicians are compensated for the time they spend fixing equipment and the time they spend driving to and from different assignments. If they commute in the service vehicles, they are also compensated for the time spent driving from their homes to their first assignments and from their last assignments back home, but only to the extent it falls outside their "normal commute."

A normal commute is the time it takes a technician to drive from his home to his branch location. Thus, if a job site is farther from a technician's home than his branch office, the technician is compensated for the extra time it takes him to reach the job site. But if a job site is the same distance or closer to a technician's home than his branch office, the technician is not compensated for time spent driving to the job site. Alcantar claims that California law requires Hobart to compensate technicians for their normal commute. The crux of this claim is the allegation that, while commuting to and from work in Hobart's vehicles, the service technicians are under Hobart's control.

As a condition of their employment, Hobart's service technicians must sign an agreement governing their use of the vehicles. The agreement states that the technicians have the option either to commute in their vehicles or leave the vehicles at their branch offices:

> I understand that I have the option of driving
> the company vehicle to my home at the end of

> the work day and from my home to my first
> work assignment of the day. I also understand
> I may park the company vehicle at the office
> to which I am assigned.

Alcantar maintains this choice is illusory. The branch offices do not have enough secured parking spaces for technicians' vehicles. Because the technicians are responsible for the tools and parts inside the vehicles, they risk having to pay for any stolen tools and parts if the vehicles are burglarized at the branch offices.

The agreement also places numerous restrictions on the service technicians' use of the vehicles, including prohibiting personal use without prior approval:

> Personal use of the service vehicle, other than
> commuting from home to the first work
> assignment and from the last work assignment
> to home, is strictly prohibited unless prior
> written approval is granted by management.
> (An example of personal use for which prior
> approval could be granted would be in case of
> a dental appointment which cannot be
> scheduled after hours or on a weekend.)

The agreement also prohibits service technicians from carrying passengers without prior approval. Transporting or storing alcohol is also forbidden, and the agreement does not give service technicians the option to seek permission from management to do so. By signing the agreement, the technicians acknowledge that "any infraction of these rules will result in disciplinary action up to and including termination." Hobart's personnel manual echoes the

agreement, listing the "[o]peration of a service vehicle for personal use" as grounds for termination. In addition to these limitations, Hobart also expects service technicians to respond to calls on their company-issued cell phones while driving to and from their first and last assignments of the day.[1] Alcantar alleges that, as a result of these restrictions and requirements, service technicians are under Hobart's control when commuting to and from work and thus must be compensated for their time.

As hourly employees, the technicians are also required to take meal and rest breaks throughout the day. Alcantar alleges that Hobart failed to provide these breaks.

## II. District Court Proceedings

Alcantar's complaint, filed October 5, 2011, alleges violations of California Labor Code § 1194. The complaint also alleges derivative claims under the Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200 *et seq.*, and PAGA, Cal. Lab. Code §§ 2698 *et seq.* Alcantar sought certification of a class of service technicians employed by Hobart in the four years preceding the filing of the lawsuit.[2]

---

[1] Hobart changed its policy less than a year after Alcantar filed suit, announcing to service technicians that it would neither control their "ability to use the vehicle for personal purposes" nor require them "to perform any services for Hobart" during the drive to and from work.

[2] Alcantar actually sought certification of a class of persons employed by Hobart in the four years preceding the filing of the lawsuit, with two subclasses: persons employed as service technicians and persons who worked overtime and were paid an hourly wage and additional compensation in the same work week. Only the first subclass is relevant here.

Hobart and ITW opposed class certification and moved for summary judgment on all claims.

The district court denied Alcantar's motion for class certification, explaining that Alcantar failed to satisfy the commonality requirement of Federal Rule of Procedure 23(a)(2) and the predominance requirement of Federal Rule of Procedure 23(b)(3). The court then granted the motion for summary judgment as to Alcantar's overtime claim for commute time but held that there was a genuine issue of material fact as to whether Hobart complied with California's meal- and rest-break requirements. The district court concluded that the derivative UCL and PAGA claims survived to the same extent as the overtime claim.

Hobart and ITW moved for summary judgment a second time, arguing that Alcantar had not complied with PAGA's notice requirements. The district court agreed. The parties stipulated to dismissal of the § 1194 claim and the UCL claim and Alcantar timely appealed, challenging the district court's orders denying certification, granting in part the first motion for summary judgment, and granting the second motion for summary judgment.

## STANDARD OF REVIEW

We review de novo the district court's decision to grant or deny summary judgment, viewing the facts in the light most favorable to the non-moving party. *Alexander v. FedEx Ground Package Sys.*, 765 F.3d 981, 987 (9th Cir. 2014). "[S]ummary judgment is appropriate when 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Albino v. Baca*,

747 F.3d 1162, 1168 (9th Cir. 2014) (en banc) (quoting Fed. R. Civ. P. 56(a)).

We review orders granting or denying class certification for abuse of discretion. *Parra v. Bashas', Inc.*, 536 F.3d 975, 977 (9th Cir. 2008). "An abuse of discretion occurs when the district court, 'in making a discretionary ruling, relies upon an improper factor, omits consideration of a factor entitled to substantial weight, or mulls the correct mix of factors but makes a clear error of judgment in assaying them.'" *Id.* at 977–78 (quoting *Waste Mgmt. Holdings, Inc. v. Mowbray*, 208 F.3d 288, 295 (1st Cir. 2000)).

## DISCUSSION

### I. Class Certification

Alcantar contends that the district court improperly reached the merits of his claims in denying class certification under Rule 23(a)(2) and Rule 23(b)(3).

"The class action is 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.'" *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2550 (2011) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700–01 (1979)). This exception is justified where the class members and the class representative possess the same interest and have suffered the same injury. *Id.* Rule 23(a) seeks to ensure that the class claims are limited to those "'fairly encompassed by the named plaintiff's claims.'" *Id.* (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 156 (1982)). To that end, Rule 23(a) conditions certification on a demonstration that

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

Courts must perform a "rigorous analysis" of these prerequisites before concluding that Rule 23(a) is satisfied. *Wal-Mart*, 131 S. Ct. at 2551 (quoting *Falcon*, 457 U.S. at 161). The analysis may "entail some overlap with the merits of the plaintiff's underlying claim," *id.*, but Rule 23 "grants courts no license to engage in free-ranging merits inquiries at the certification stage." *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1194–95 (2013). Instead, "[m]erits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Id.* at 1195. Once these prerequisites are satisfied, the proposed class must meet at least one of the three requirements set forth in Rule 23(b).

## A.  Commute-Time Claim

Although Rule 23(a)(2) refers to common "questions of law or fact" in the plural, even a single common question will do. *Wal-Mart*, 131 S. Ct. at 2556. But because "'[a]ny competently crafted class complaint literally raises common questions,'" *id.* at 2551 (alteration in original) (quoting Richard A. Nagareda, *Class Certification in the Age of*

*Aggregate Proof*, 84 N.Y.U. L. REV. 97, 131–32 (2009)), courts should look for a "common contention" in determining whether putative class members' claims can be litigated together. *Id*. "That common contention, moreover, must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* Thus, it is not just the common contention, but the answer to that contention, that is important: "What matters to class certification . . . is not the raising of common 'questions'—even in droves—but, rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Id.* (alterations in original) (quoting Nagareda, *supra*, at 132).

A common contention need not be one that "will be answered, on the merits, in favor of the class." *Amgen*, 133 S. Ct. at 1191. It only "must be of such a nature that it is capable of classwide *resolution*." *Wal-Mart*, 131 S. Ct. at 2551 (emphasis added); *see Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178 (1974) ("In determining the propriety of a class action, the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met." (quoting *Miller v. Mackey Int'l*, 452 F.2d 424, 427 (5th Cir. 1971)). Thus, "whether class members could actually prevail on the merits of their claims" is not a proper inquiry in determining the preliminary question "whether common questions exist." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 983 n.8 (9th Cir. 2011). "To hold otherwise would turn class certification into a mini-trial," *id.*, when the purpose of class certification is merely "to select the 'metho[d]' best suited to adjudication of the controversy 'fairly and

efficiently."' *Amgen*, 133 S. Ct. at 1191 (alteration in original).

In denying certification, the district court observed that Alcantar had not offered any evidence demonstrating that Hobart had a uniform policy requiring technicians to commute in the service vehicles and stated, "Absent proof of a company-wide policy, the commonality requirement is not met." The court then concluded that, "because there is no evidence to suggest that technicians were required to drive the service vehicles to their homes, the lack of a potential legal argument precludes a common issue of fact or law for purposes of Rule 23(a)(2)."

The district court's conclusion is incorrect for two reasons. First, as explained below, there is a question of fact as to whether Hobart requires technicians to use its vehicles for their commute. *See infra* Part II. Second, it asks too much of Alcantar, who need only show that there is a common contention capable of classwide resolution—not that there is a common contention that "will be answered, on the merits, in favor of the class." *See Amgen*, 133. S. Ct. at 1191. His contention is that service technicians, by virtue of their inability to park at Hobart's facilities, must drive Hobart's vehicles to work and, as a result of the rules applicable to their use of the vehicles, are sufficiently controlled during that commute to render the time compensable under California law. If it should ultimately be determined that Hobart did not exercise sufficient control over the technicians, that determination would not amount to "'some fatal dissimilarity'" among class members that would make use of the class action device inefficient or unfair. *Id.* at 1197 (quoting Nagareda, *supra*, at 107). Instead, it would generate "a fatal *similarity*—failure of proof as to an element of the

plaintiff's [claim]." *Id.* (alteration in original) (emphasis added) (quoting Nagareda, *supra*, at 107). A determination either way is inappropriate at the certification stage.

We conclude that the district court erred in denying class certification because it evaluated the merits rather than focusing on whether the questions presented—meritorious or not—were common to the class. By doing so, the district court made an error of law, thereby abusing its discretion.

## B. Meal- and Rest-Break Claim

Alcantar contends that the district court also improperly evaluated the merits in denying certification of the meal- and rest-break claim. We need not reach this issue, however, because we conclude that the district court did not abuse its discretion in concluding that the proposed class also failed under Rule 23(b).

In addition to Rule 23(a)'s four prerequisites, a proposed class must satisfy at least one of the requirements listed in Rule 23(b). Fed. R. Civ. P. 23(b). Alcantar moved for certification under Rule 23(b)(3), which requires a court find that "questions of law or fact common to class members predominate over any questions affecting only individual members" and that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The district court held that even if the class met Rule 23(a)'s prerequisites, the class would still fail under Rule 23(b)(3) because questions as to why service technicians missed their meal and rest breaks, whether because of their employer's failure to provide them or their own choice to forgo them, would predominate

over questions common to the class. This conclusion is well within the district court's discretion.

## II. Summary Judgment on Commute-Time Claim

Alcantar challenges the district court's decision to grant summary judgment in favor of Hobart on Alcantar's commute-time claim. The district court's decision was based on its conclusion that § 1194 does not require Hobart to compensate Alcantar for commute time where there is no dispute that Hobart does not expressly require the technicians to commute in its vehicles.

An employee's commute is not typically compensable under California labor law, even "when the employee commutes in a vehicle that is owned, leased, or subsidized by the employer." Cal. Lab. Code § 510(b). The time may be compensable, however, if the employee can classify it as "hours worked." The Industrial Welfare Commission has defined "hours worked" as "the time during which an employee is subject to the control of an employer," including "all the time the employee is suffered or permitted to work, whether or not required to do so." *See* Cal. Code Regs. tit. 8, § 11040(2)(K).

In *Morillion v. Royal Packing Co.*, the California Supreme Court elaborated on what constitutes control. 995 P.2d 139 (Cal. 2000), *as modified* (May 10, 2000). The plaintiff in *Morillion* represented a class of agricultural laborers. Their employer, Royal Packing Company, required them to meet at specific departure points each morning so that it could transport them to the fields where they worked. At the end of the day, Royal took them back to the departure points. *Id.* Royal prohibited the workers from using their

own transportation to get to and from the fields. The California Supreme Court held that the workers were entitled to compensation for the time they spent traveling to and from the fields, reasoning that they "were foreclosed from numerous activities in which they might otherwise engage if they were permitted to travel to the fields by their own transportation." *Id.* at 146. The court rejected Royal's argument that its decision would render all activities an employer requires (even grooming) compensable. The court explained that "[t]he level of the employer's control over its employees, rather than the mere fact that the employer requires the employees' activity, is determinative." *Id.*

Alcantar does not assert that Hobart exercises control over him should he commute in his own vehicle. Therefore, to prevail at trial he must prove not only that Hobart's restrictions on him during his commute in Hobart's vehicle are such that he is under Hobart's control, but also that, despite Hobart's profession that use of its vehicles is voluntary, employees are, as a practical matter, required to commute in Hobart's vehicles. The first is a question of law which we return to the district court. The second is a question of fact, which we find is appropriate for a jury as Alcantar has raised a genuine issue of material fact.

Alcantar acknowledges that Hobart has no official policy requiring technicians to commute in the service vehicles but argues that, in reality, service technicians have no meaningful choice. Each vehicle is equipped with tools and *service parts. Although the parties dispute the value of the tools and parts* (Hobart argues that the value ranges from $5,000 to $12,000; Alcantar insists a stock inventory places it at over $80,000), they agree that the technicians are responsible for them. Thus, Alcantar argues, if the tools or parts are stolen, the

technicians must pay for them. Alcantar contends that because Hobart does not provide sufficient secure parking spaces, the technicians have to take the vehicles home or risk theft of the tools and service parts.

Alcantar submits numerous declarations from service technicians supporting this contention. The declarations state that even though Hobart did not have a policy requiring technicians to drive the vehicles home, the technicians could not risk having to pay for stolen tools or parts. In addition to the declarations, Alcantar offers deposition testimony from Hobart's Rule 30(b)(6) representative, who conceded that although there is enough unsecured parking at each branch, there is not enough secured parking for every technician to leave a service vehicle overnight. Alcantar also submits an excerpt from Hobart's personnel manual in which Hobart acknowledges the value of the tools and service parts:

> This vehicle is provided to you for business purposes only. When you consider the high dollar value of the truck parts inventory, the value of the tools, along with the information contained in the technical bulletins you are required to carry, you can understand why the use of the vehicle is limited to business purposes only.

Alcantar has gone beyond the pleadings and has pointed to declarations and deposition testimony that raise a genuine dispute of material fact as to whether technicians are, as a practical matter, required to commute in Hobart's vehicles. It is not for the court to evaluate the persuasiveness of this evidence. Alcantar need only show that a reasonable jury

could find for him at trial.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986).

Hobart maintains that Alcantar's claim cannot survive summary judgment because the agreement between Hobart and the technicians gives technicians the choice to commute in their vehicles or leave them at their branch office.  But as we explained above, there is a dispute of material fact as to whether that choice is genuine or illusory.  To the extent Hobart argues that Alcantar's claim is foreclosed as a matter of law, the court is unpersuaded.  Hobart cites no precedent stating that an employer must expressly require employees commute in their vehicles for the employees' commute time to be compensable.  Nor does the court read *Morillion* or the cases interpreting it as imposing such a condition.  Indeed, *Morillion's* chief concern was with what happened in practice—that Royal determined "when, where, and how" the laborers commuted to work.  *See Morillion*, 995 P.2d at 146. Cases applying *Morillion* have looked at employees' behavior in evaluating plaintiffs' claims that their employer required them to take certain transportation.  *See Overton v. Walt Disney Co.*, 136 Cal. App. 4th 263, 271 (Ct. App. 2006), *as modified* (Feb. 1, 2006) (concluding that the employer did not require its employees to take an employer-provided shuttle where there was evidence that some employees used alternative means of transportation); *see also Rodriguez v. SGLC, Inc.*, No. 2:08-CV-01971, 2012 WL 5705992, at *18 (E.D. Cal. Nov. 15, 2012) (finding that because there was evidence that *all* employees took employer-provided transportation, even though the employer did not explicitly require they take it, there was a genuine dispute of material fact as to whether plaintiffs were free to choose their mode of transportation).  Thus, we conclude that Alcantar's argument is not foreclosed as a matter of law.

Nor are we persuaded by the reasoning of the dissent, which relies on a provision of Hobart's Personnel Policies and Procedures. That provision states that technicians are responsible for the replacement of any tool lost or stolen *through the technicians' negligence* and directs technicians to ensure that their vehicles are locked when left unattended. Relying on this provision, the dissent contends that "any argument that the employees are somehow required to drive their service vehicles home for the security of the vehicle's contents has no basis in the record. " Citing the lack of evidence that Hobart has ever held a technician liable for a break-in at the facility, the dissent overlooks the fact that no one has ever actually parked there.

In contrast to the provision on which the dissent relies, the "Service Technician Rules/Understandings" document states that technicians are absolutely responsible for the tools, regardless of culpability. It provides that service technicians "accept full responsibility" if tools are "lost, misplaced or . . . not . . . available when regularly inventoried." In addition, as noted above, Alcantar has submitted numerous declarations from other technicians, stating that they could not risk leaving the vehicles at Hobart's facilities because they would be forced to pay for stolen tools or parts. These declarations say nothing of negligence, and suggest that technicians have received the message from Hobart, implicitly or explicitly, that they are absolutely responsible for the tools. Hobart's apparently inconsistent policies make the testimony of witnesses necessary to resolve the extent to which technicians are held responsible for the tools and parts. This is unlike the employees in *Overton*, who demonstrably had options other than riding a shuttle bus to work.

## III.    Summary Judgment on PAGA Claim

Alcantar also contends that the district court erred in ruling that Hobart was entitled to summary judgment on Alcantar's PAGA claim because the letter in which Alcantar disclosed his allegations against Hobart did not contain sufficient facts to comply with the statute's notice requirements.

PAGA allows an employee to bring an action against an employer to recover civil penalties for violations of the California Labor Code. Cal. Lab. Code § 2699(a). First, however, the employee must give "written notice by certified mail to the Labor and Workforce Development Agency and the employer of the specific provisions of [the California Labor Code] alleged to have been violated, including the facts and theories to support the alleged violation." Cal. Lab. Code § 2699.3(a)(1). ITW and Hobart argue that the letter Alcantar sent them and the Labor and Workforce Development Agency does not include sufficient facts or theories.[3]  We agree.

Alcantar's letter is a series of legal conclusions:

> Our offices have been retained by Joseluis Alcantara [sic] (Plaintiff).  Plaintiff is a former employee of ITW Food Equipment

---

[3] Alcantar asks us not to reach this issue, arguing that Hobart and ITW waived this affirmative defense or, in the alternative, that it was insufficiently pleaded.  We have no difficulty concluding that the district court did not abuse its discretion in finding the defense preserved.  Hobart and ITW asserted in their responsive pleading that Alcantar "failed to satisfy the jurisdictional prerequisites mandated by California Labor Code Sections 2698, *et seq.*"

Group, LLC aka Hobart Service (Defendant). Plaintiff contends that Defendant (1) failed to pay wages for all time worked; (2) failed to pay overtime wages for overtime worked; (3) failed to include the extra compensation required by California Labor Code section 1194 in the regular rate of pay when computing overtime compensation, thereby failing to pay Plaintiff and those who earned additional compensation for all overtime wages due; (4) failed to provide accurate wage statements to employees as required by California Labor Code section 226; (5) failed to provide reimbursement for work related expenses as required by Labor Code § 2802; and, (6) failed to provide off-duty meal periods and to pay compensation for work without off-duty meal periods to its California employees in violation of California Labor Code sections 226.7 and 512, and applicable Industrial Welfare Commission orders. Said conduct, in addition to the forgoing, violated each Labor Code section as set forth in California Labor Code section 2699.5.

The only facts or theories that could be read into this letter are those implied by the claimed violations of specific sections of the California Labor Code—that Hobart failed to pay wages for time worked, failed to pay overtime wages for overtime worked, failed to include the extra compensation required by § 1194 in the regular rate of pay when computing overtime compensation, and so on. This is insufficient.

Section 2699.3(a)(1) was adopted as part of an amendment to PAGA, intended to cure perceived abuses of the Act. As the California Court of Appeal observed,

> The Senate floor analysis stated "[the amendment] improves [the Act] by allowing the Labor Agency to act first on more serious violations such as wage and hour violations and give employers an opportunity to cure less 'serious' violations. The bill protects businesses from shakedown lawsuits, yet ensures that labor laws protecting California's working men and women are enforced— either through the Labor Agency or through the courts."

*Dunlap v. Superior Court*, 142 Cal. App. 4th 330, 338–39, 47 Cal. Rptr. 3d 614 (2006) (quoting Calif. S. Rules Comm., Off. of S. Floor Analyses, Bill Analysis for SB1809, at 5–6 (Aug. 27, 2004)). Plaintiff's letter—a string of legal conclusions with no factual allegations or theories of liability to support them—is insufficient to allow the Labor and Workforce Development Agency to intelligently assess the seriousness of the alleged violations. Neither does it provide sufficient information to permit the employer to determine what policies or practices are being complained of so as to know whether to fold or fight. Thus, we affirm. This conclusion is consistent with our unpublished opinion in *Archila v. KFC U.S. Properties, Inc.*, 420 F. App'x 667, 669 (9th Cir. 2011), in which we affirmed a district court's dismissal of a PAGA claim, observing that "none of the materials Archila submitted to KFC or the LWDA contain 'facts and theories' to support his allegations" and the demand letter "merely lists several California Labor Code

provisions Archila alleges KFC violated and requests that KFC conduct an investigation." *See also Amey v. Cinemark USA Inc.*, No. 13-CV-05669, 2015 WL 2251504, at **13–14 (N.D. Cal. May 13, 2015); *Soto v. Castlerock Farming & Transp. Inc.*, No. CIV-F-09-0701, 2012 WL 1292519, at **7–8 (E.D. Cal. Apr. 16, 2012).

## CONCLUSION

For the foregoing reasons, the judgment of the district court is affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion.

**AFFIRMED in part, REVERSED in part, and REMANDED**.

The parties shall bear their own costs on appeal.

---

N.R. SMITH, concurring in part and dissenting in part:

This case should be over. The majority correctly rejects Alcantar's contentions regarding (a) the denial of class certification on his meal break claim, and (b) the grant of summary judgment to Hobart on his PAGA claim.[1] Then, for reasons quite unclear to me, the majority fails to affirm the grant of summary judgment on the commute time claim.

---

[1] The majority also correctly concludes that the district court erred in denying Alcantar class certification on his commute time claim. However, as I would affirm the district court's grant of summary judgment to Hobart on the commute time claim, I would not remand the case, because remand would be futile.

Even viewing the facts in the light most favorable to Alcantar, as we must when reviewing a grant of summary judgment, *see Leisek v. Brightwood Corp.*, 278 F.3d 895, 898 (9th Cir. 2002), there is no genuine issue of material fact on this issue.

Under California law, Alcantar may only succeed on his commute time claim if he can show that he is subject to Hobart's control during his commute. *See* Cal. Code Regs. tit. 8, § 11040(2)(K). If an employer requires its employees to commute in employer provided vehicles and "prohibit[s] them from effectively using their travel time for their own purposes," then the employer must compensate the employees for their time as "hours worked." *See Morillion v. Royal Packing Co.*, 995 P.2d 139, 146 (Cal. 2000). However, if the employees are "free to choose—rather than required— to" utilize employer provided transportation, then they are not under their employer's control, regardless if they ultimately use the employer provided transportation. *See id.* at 148 n.5; *Overton v. Walt Disney Co.*, 38 Cal. Rptr. 3d 693, 699 (Ct. App. 2006).

Here, Alcantar and all Hobart employees can choose to either commute in their own personal vehicles or commute in Hobart provided service vehicles. Nothing prevents Hobart employees from utilizing either option. Thus, because Hobart employees are free to choose their method to commute, they are not under Hobart's control during their commutes and Hobart is not obligated to pay them for their commute time. The facts, as alleged by Alcantar, confirm this result:

• No one disputes that Hobart has a written policy that allows its employees to either (1) park their service vehicles at Hobart's facilities at the end of their shift

and commute home in their personal vehicles or (2) commute in their service vehicles.

- No one disputes that, if Hobart employees choose to park their service vehicles at a Hobart facility overnight and commute in their own personal vehicles, they are not subject to any Hobart policies that limit how the employees can use their commute time; i.e., they are not under Hobart's control.

- Alcantar alleges that, if Hobart employees commute in their service vehicles, they cannot use the commute time for their own benefit because of Hobart's policies restricting the use of the service vehicles. Thus, the employees are under Hobart's control during their normal commute if they commute in their service vehicles.

- No one disputes that Hobart facilities do not have enough secured parking spaces (i.e., parking spaces in a locked area, either inside a building or in a fenced area) to allow all Hobart employees to leave their vehicles overnight in a secured parking area. However, there is enough unsecured parking for all vehicles, should every employee choose to park their vehicle overnight at the Hobart facility.

- No one disputes that Hobart has a general policy declaring Hobart employees responsible for their tools and equipment. The "Service Technicians Rules/Understanding" form (which all Hobart service technicians sign) states: "Should any of the tools be *lost, misplaced or should they not be available when regularly inventoried*, or returned by me at the request

of the company, then I accept full responsibility for such tools, and agree to pay for such tools." However, it is also undisputed that Hobart has a separate provision addressing an employee's liability for the *theft* of tools and equipment from their service vehicles. Hobart's Personnel Policies and Procedures Handbook (which is also provided to each Hobart employee) states: "You are responsible for the replacement of any tool *lost or stolen through your negligence. . . .* Hobart tools are insured against theft but only when theft results from forced entry to a vehicle or workshop. *Consequently, you must ensure that your vehicle is securely locked when it is left unattended.*"[2]

Given these facts (viewed in the light most favorable to Alcantar), the commute time is not compensable as "hours worked." *See Morillion*, 995 P.2d at 148 n.5; *Overton*, 38 Cal. Rptr. 3rd at 699. Hobart employees have the choice to either (1) park their service vehicles overnight at Hobart's facilities in a secured area (if spots are available) or in an unsecured area with locked doors, and commute in their own personal vehicle (outside of Hobart's control), or (2) commute in their service vehicles (under Hobart's

---

[2] Alcantar admits that this is Hobart's policy. In fact, Alcantar quotes the written policy in his opening brief and specifically recognizes that Hobart's Regional Director for the Central West and Southern California Regions confirmed that the written policy was accurate. Additionally, Alcantar has not argued that Hobart fails to follow its written policy. Nor has he presented evidence that Hobart has ever held an employee liable for the cost of stolen tools even though the employee was not negligent. Therefore, based upon the record before us, it is undisputed that Hobart only holds its employee liable for the cost of tools stolen from his or her service vehicle if the employee's negligence facilitated the theft.

control). Nothing prevents Hobart employees from leaving their service vehicles overnight at Hobart's facilities.

Alcantar first argues (and the majority buys his argument) that the option to leave the service vehicles overnight at Hobart's facilities may be illusory, because the vehicles would be left in unsecured parking lots and the Hobart employees would be liable for the cost of replacing any stolen tools or equipment, should the vehicles be burglarized. However, this argument contradicts the undisputed facts in the record and Hobart's policy. Hobart's undisputed policy regarding equipment stolen from service vehicles states that employees are only liable for tools and equipment stolen out of their vehicles *if the theft occurred because of the employees' negligence*. Hobart's policy further clarifies the duty of care that its employees must follow when leaving their vehicles; *they must lock their doors*. If tools or equipment are stolen out of a locked vehicle, Hobart's insurance covers the loss, not the employee. Further, Hobart has expressly authorized its employees to leave their vehicles overnight at its facilities. Therefore, because Hobart has established the requisite duty for its employees, *it cannot be negligence to do exactly as Hobart has directed*. Because Hobart employees would not be held liable for tools or equipment stolen from service vehicles left overnight at Hobart facilities (either in the secured area or locked in the unsecured area), any argument that the employees are somehow required to drive their service vehicles home for the security of the vehicle's contents has no basis in the record. Alcantar has not provided any evidence that Hobart does not follow its theft policy or has informed its employees that they would be liable for the cost of tools stolen out of locked vehicles. Alcantar has not shown that Hobart has *ever* required an employee to pay for tools stolen out of his or her

service vehicle when the tools were stolen after the employee had locked the doors to his or her vehicle.[3]  Therefore, the option of leaving service vehicles overnight at Hobart facilities cannot be illusory.  There is no genuine issue of material fact on this issue.

To contradict this conclusion, the majority manufactures the argument that Hobart's policies are "inconsistent." Alcantar has never even made that argument.  Instead, in his opening brief, Alcantar recognized Hobart's undisputed policy, as conveyed in both the Rules/Understandings form and Hobart's Manual:

> The Rules/Understandings explain that Technicians are responsible for tools assigned to them, stating:

---

[3] The majority responds by suggesting that Alcantar shouldn't be required to provide evidence that Hobart holds its employees liable for stolen tools *even if* they were not negligent.  Not true.  Alcantar is responding to a motion for summary judgment.  He has the burden to support his claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (holding that summary judgment is appropriate against a "[p]arty who fails to make a showing sufficient to establish the existence of an element essential to that party's case").  Evidence of *any occurrence*, regardless of the location, when Hobart has held an employee liable for the cost of tools stolen out of a locked vehicle would be sufficient to show that Hobart does not follow its theft policy.  Such evidence would show that Alcantar's alleged reason for employees not leaving vehicles overnight at Hobart's facilities is valid.  But Alcantar has not provided any such evidence. Therefore, we must conclude that Hobart follows its stated policy.  Any fear that Hobart employees would be held liable for tools stolen out of their vehicle if they left their vehicles overnight at a Hobart facility is completely unsupported by the record.

. . . I assume full responsibility for the tools as well as any service manuals . . . Should any of the tools be lost, misplaced or should they not be available when regularly inventoried, or returned by me at the request of the company, then I accept full responsibility for such tools, and agree to pay for such tools.

Hobart's Manual also explains:

We feel that a Service Technician cannot properly service the equipment unless the proper tools are available at all times. Therefore, it is your responsibility to ensure that the full inventory of assigned tools be maintained . . . You are responsible for the replacement of any tool lost or stolen through your negligence.

[Hobart's representative] confirmed that this is an accurate statement of Hobart's policy.

Alcantar clearly saw no inconsistency between these two provisions, but instead viewed them as one complete policy. By manufacturing its own argument, the majority again attempts to create a genuine issue of fact where there is none.

Because Alcantar has presented both the Rules/Understandings form and Hobart's Manual as an "accurate statement" of Hobart's policy, we *must* give both provisions effect.  This is not hard to do, because the

provisions are not inconsistent.[4] Hobart's employees are responsible for the cost of their tools if they are lost, misplaced, or otherwise unavailable when requested. However, if the tools were stolen, the employees will only be held liable for their cost if the theft occurred because of the employees negligence. The only portion of Hobart's policy that discusses an employee's liability for stolen tools remains the provision contained in Hobart's Manual. This is an undisputed fact that the majority cannot ignore.

Alcantar argues (and the majority buys the argument) that the lack of secured parking somehow renders illusory the option to leave service vehicles overnight at Hobart facilities. However, the availability of secured parking areas at Hobart facilities does not matter in this analysis. A Hobart employee's liability for stolen tools does not depend on whether the vehicles were parked in a secured parking area. Instead, the employee's liability occurs only when the theft was facilitated by the employee's negligence. Parking a locked vehicle at a location specifically authorized by Hobart cannot be negligence, because Hobart has expressly authorized such conduct.

The majority responds by again trying to manufacture a disputed issue of fact. The majority emphasizes that some

---

[4] And even if the majority were correct in declaring the two provisions inconsistent, general contract principles dictate that the more specific theft provision outlined in Hobart's manual should qualify the meaning of the more general provision contained on the Rules/Understandings form. *See Brinderson–Newberg Joint Venture v. Pacific Erectors, Inc.*, 971 F.2d 272, 279 (9th Cir.1992) ("It is well settled that '[w]here there is an inconsistency between general provisions and specific provisions, the specific provisions ordinarily qualify the meaning of the general provisions.'" (quoting Restatement of Contracts § 236(c))).

Hobart employees have provided declarations asserting that they thought that commuting in their service vehicles was their only practical option, because of the concern for the safety of their tools.   According to the majority, this subjective belief renders the option of leaving the vehicles overnight at Hobart facilities illusory.   However, the California Court of Appeal rejected similar arguments in *Overton*, 38 Cal. Rptr. 3d at 699.   In *Overton*, Disney employees at the Disneyland Resort in California, who commuted to work in their own vehicles, were required to park at a parking lot one mile from the Resort.  *Id.* at 694. Disney provided a shuttle bus for the employees that ran from the parking lot to the Resort.  *Id.*  Relying on *Morillion v. Royal Packing Co.*, the Disney employees sued for unpaid wages, claiming that the time they spent waiting for and riding the shuttle bus was compensable time, because they were required to use the shuttle for their commute.  *Overton*, 38 Cal. Rptr. 3d at 695.  The California Court of Appeal rejected the Disney employees' claim, holding that the employees were not required to ride the shuttle bus.  *Id.* at 699.   Instead, the court noted that the Disney employees could use any number of alternative methods to commute, including riding the train or bus, being dropped off, or walking or riding their bikes.  *Id.*  The court then rejected the argument that commute time was compensable for "employees who, as a practical matter, are required to use an employer-provided shuttle because no alternative transportation is available or feasible."  *Id.* at 700.  The court reasoned that the dispositive inquiry in *Morillion* is not whether the individual employees had a meaningful alternative, but whether the employees (as a whole) "were free to choose—rather than required—to ride their employer's buses."  *Id.* (quoting *Morillion*, 995 P.2d at 148 n.5).

Just like the employees in *Overton* (who thought that utilizing the shuttle bus was the only practical method of commuting), Alcantar argues that commuting in his service vehicle home was the only practical method of commuting, because it ensured the safety of the tools and equipment for which he was responsible. However, viewing the undisputed facts, Alcantar and all other Hobart employees were free to choose to leave their service vehicles at Hobart facilities and commute in their own personal vehicles, because there would be absolutely no negative consequences for doing so. Therefore, no reasonable jury could conclude that the option is illusory. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (reasoning that a genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party").

Under both *Morillion* and *Overton*, Hobart is not required by California law to compensate its employees for their normal commute time, because employees are free to choose to commute in their own personal vehicles outside of Hobart's control. Hobart is entitled to judgment as a matter of law. Accordingly, this case should be over.