CORMAC J. CARNEY, UNITED STATES DISTRICT JUDGE
I. INTRODUCTION AND BACKGROUND
This wage-and-hour class action was filed by Plaintiff Bill Taylor against Defendants Cox Communications California, LLC and Cox Communications, Inc. (together, "Defendants") in Santa Barbara Superior Court in 2012. (Dkt. 1-3 ["FAC"].) Most of the litigation proceeded in state court and, on March 4, 2016, the state court granted Plaintiff's motion for class certification. (Dkt. 10-6.) Shortly after, on March 21, 2016, Defendants removed the case to this Court.
In his FAC, Plaintiff alleges causes of action for violations of a number of sections of the California Labor Code, as well as unfair business practices under California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200. (See generally FAC.) Essentially, Plaintiff argues that Cox systematically underpaid its field technicians-employees who travel to customers' residences to install and repair television and internet services. (Id. ¶ 10.)
The certified class that Plaintiff represents is a class of Defendants' field technicians who participated in a program called "Home Start."[1] The Home Start program allows field technicians to keep their company vehicles at home-as opposed to the company's depot. At the beginning of each work day, a Home Start participant clocks in remotely from home and drives directly *884 to the location of the first work assignment, instead of checking in at a company facility. At the end of each work day, the Home Start participant commutes home from the last work assignment.
The state court certified four class claims arising out of California state law. (Dkt. 10-6 Ex. 1 at 1.) The primary claim is that Defendants failed to compensate Home Start participants for time commuting home at the end of each work day. (Id. ) The remaining claims are derivative claims for wage statements, waiting time penalties, and unfair competition. (Id. )
Before the Court is Plaintiff's motion for summary judgment on the certified claims, (Dkt. 40), and Defendants' cross-motion for summary judgment, (Dkt. 39). For the following reasons, Plaintiff's motion is DENIED and Defendants' motion is GRANTED.
II. FACTS
The following facts are not in dispute. Defendants provide telephone, internet, and video services to consumers and businesses. (Dkt. 43 [Defs.' Statement of Uncontroverted Facts, hereinafter "Defs.' SUF"] 1; see also Dkt. 47-2 [Pl.'s Opp'n to Defs.' SUF].) The central duty of Defendants' field technicians, who are hourly employees, is to travel to people's homes, in company vehicles, and install or repair Defendants' products or services. (Defs.' SUF 5.)
Plaintiff was hired as a field technician in Defendants' Santa Barbara office in 2005. (Defs.' SUF 5.) At that time, field technicians were not permitted to take their company vehicles home. (Defs.' SUF 6.) Instead, Plaintiff would drive his personal vehicle to the company's depot each morning, clock in, and then begin using his assigned company vehicle, which had been parked overnight at the depot. (Defs.' SUF 7.) After completing his last assignment for the day, Plaintiff would drive the company vehicle to the depot, clock out, and then commute home in his personal vehicle. (Defs.' SUF 8.)
At some point after Plaintiff was hired, Defendants initiated the Home Start program. (Defs.' SUF 10; Dkt. 47-2.) Home Start participants, as opposed to "Office Start" participants who keep their company vehicles at the company depot overnight, are permitted to take the company vehicle to and from their homes. (Dkt. 44 [Pl.'s Statement of Uncontroverted Facts, hereinafter "Pl.'s SUF"] 7.) Plaintiff signed a form electing to participate in the Home Start program on September 28, 2009. (Defs.' SUF 16; Dkt. 39-4 Ex. B-10.) Approximately 70 to 80% of Plaintiff's fellow field technicians in the Santa Barbara office also opted to participate in the Home Start program. (Defs.' SUF 13.) On June 23, 2010, Plaintiff signed a form titled the "Home Start Selection Option Statement." (Defs.' SUF 19; Dkt. 39-4 Ex. B-11.) The form included the following statement: "As Home Start is an optional program, any Technician who is part of the Home Start program may opt out of the program for any reason by simply notifying his/her supervisor." (Defs.' SUF 20; Dkt. 39-4 Ex. B-11.) Plaintiff testified at his deposition that he agreed with this statement when he signed the form. (Dkt. 39-4 Ex. B [Deposition of Bill Taylor] 89:4-6.)
Under the Home Start program, a work shift begins for a field technician when he or she leaves home and starts commuting to the first work site. (Pl.'s SUF 11.) In other words, the field technician is paid for time traveling from home to the location of the first assignment. (Defs.' SUF 18.) But, the time spent commuting home from the last assignment of the day is treated as unpaid commuting time. (Defs.' SUF 12, 18.)
There are a number of other policies imposed by the Home Start program.
*885 Field technicians are allowed to visit the company depot once a week to load their assigned company vehicles with all the equipment and tools necessary to perform that week's work. (Pl.'s SUF 9.) They must then travel with the tools and equipment, and are responsible for safeguarding both the vehicle and its contents. (Pl.'s SUF 13.) While in the company vehicles, field technicians may not engage in personal business, carry passengers, or use their cell phones. (Pl.'s SUF 18.) Further, field technicians may not make any stops on their commute home-even fuel stops are prohibited and must be made earlier in the day. (Id. ) These policies are applied to all field technicians working in California under the Home Start program. (Pl.'s SUF 17.)
Defendants argue in their motion that they are entitled to summary judgment on all of the certified claims because they are based on the false premise that the time field technicians spend commuting home in company vehicles is compensable work time. (See Dkt. 39 [Defs.' Motion for Summary Judgment] at 2.) Defendants further argue that the claims for accurate wage statements, waiting time penalties, and unfair competition fail for the same reason because they are derivative of the claim for failure to pay wages for commute time. (Id. ) Plaintiff argues in his motion that the commuting time should be considered compensable work time under California law and requests a ruling that Defendants must pay class members for this time. (Dkt. 40-1 [Pl.'s Opening Brief, hereinafter "Pl.'s Br."] at 25.)
III. LEGAL STANDARD
The Court may grant summary judgment on "each claim or defense-or the part of each claim or defense-on which summary judgment is sought." Fed. R. Civ. P. 56(a). Summary judgment is proper where the pleadings, the discovery and disclosure materials on file, and any affidavits show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Id. ; see also Celotex Corp. v. Catrett , 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. , 477 U.S. at 325, 106 S.Ct. 2548. A factual issue is "genuine" when there is sufficient evidence such that a reasonable trier of fact could resolve the issue in the nonmovant's favor. Anderson v. Liberty Lobby, Inc. , 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A fact is "material" when its resolution might affect the outcome of the suit under the governing law, and is determined by looking to the substantive law. Id. "Factual disputes that are irrelevant or unnecessary will not be counted." Id. at 249, 106 S.Ct. 2505.
Where the movant will bear the burden of proof on an issue at trial, the movant "must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party." Soremekun v. Thrifty Payless, Inc. , 509 F.3d 978, 984 (9th Cir. 2007). In contrast, where the nonmovant will have the burden of proof on an issue at trial, the moving party may discharge its burden of production by either (1) negating an essential element of the opposing party's claim or defense, Adickes v. S.H. Kress & Co. , 398 U.S. 144, 158-60, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970), or (2) showing that there is an absence of evidence to support the nonmoving party's case, Celotex Corp. , 477 U.S. at 325, 106 S.Ct. 2548. Once this burden is met, the party resisting the motion must set forth, by affidavit, or as otherwise provided under Rule 56, "specific facts showing that there is a genuine issue for trial." Anderson , 477 U.S. at 256, 106 S.Ct. 2505. A party opposing summary judgment must support its assertion that a *886 material fact is genuinely disputed by (i) citing to materials in the record, (ii) showing the moving party's materials are inadequate to establish an absence of genuine dispute, or (iii) showing that the moving party lacks admissible evidence to support its factual position. Fed. R. Civ. P. 56(c)(1)(A)-(B). The opposing party may also object to the material cited by the movant on the basis that it "cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). But the opposing party must show more than the "mere existence of a scintilla of evidence"; rather, "there must be evidence on which the jury could reasonably find for the [opposing party]." Anderson , 477 U.S. at 252, 106 S.Ct. 2505.
In considering a motion for summary judgment, the court must examine all the evidence in the light most favorable to the non-moving party, and draw all justifiable inferences in its favor. Id. ; United States v. Diebold, Inc. , 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962) ; T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n , 809 F.2d 626, 630-31 (9th Cir. 1987). The court does not make credibility determinations, nor does it weigh conflicting evidence. Eastman Kodak Co. v. Image Tech. Servs., Inc. , 504 U.S. 451, 456, 112 S.Ct. 2072, 119 L.Ed.2d 265 (1992). But conclusory and speculative testimony in affidavits and moving papers is insufficient to raise triable issues of fact and defeat summary judgment. Thornhill Pub. Co., Inc. v. GTE Corp. , 594 F.2d 730, 738 (9th Cir. 1979). The evidence the parties present must be admissible. Fed. R. Civ. P. 56(c). "If the court does not grant all the relief requested by the motion, it may enter an order stating any material fact-including an item of damages or other relief-that is not genuinely in dispute and treating the fact as established in the case." Fed. R. Civ. P. 56(g).
IV. DISCUSSION
Generally, an employee's commute is not compensable under California law, "even 'when the employee commutes in a vehicle that is owned, leased, or subsidized by the employer.' " Alcantar v. Hobart Serv. , 800 F.3d 1047, 1054 (9th Cir. 2015) (citing Cal. Lab. Code § 510(b) ). The time is compensable, however, if it meets the Industrial Welfare Commission's ("IWC") definition of "hours worked." Id. The IWC, which formulates wage and hour regulations in California, defines "hours worked" as follows:
"Hours worked" means the time during which an employee is subject to the control of an employer, and includes all the time the employee is suffered or permitted to work, whether or not required to do so.
See Cal. Code Regs. tit. 8, § 11040.
The California Supreme Court held in Morillion v. Royal Packing Co. , 22 Cal. 4th 575, 94 Cal.Rptr.2d 3, 995 P.2d 139 (2000), that IWC's definition of "hours worked" establishes two separate standards, each of which independently constitutes "hours worked." Id. at 582, 94 Cal.Rptr.2d 3, 995 P.2d 139. First, time constitutes "hours worked" if the employee was "subject to the control of the employer." Second, time constitutes "hours worked" if the "employee is suffered or permitted to work, whether or not required to do so." Id.
The question before the Court is whether class members were "subject to the control" of Defendants when they commuted home, or were "suffered or permitted to work" during those commutes. Summary judgment must be denied if there is a genuine issue of material fact as to either standard.
*887 1. "Subject to the Control of the Employer"
In Morillion , the California Supreme Court analyzed the meaning of the "subject to the control of the employer" standard. There, plaintiffs were a class of agricultural employees who sought wages for time required to spend traveling on their employer's buses. The employer "required plaintiffs to meet for work each day at specified parking lots or assembly areas," then "transported them, in buses that [the employer] provided and paid for, to the fields where plaintiffs actually worked." Morillion , 22 Cal. 4th at 579, 94 Cal.Rptr.2d 3, 995 P.2d 139. "At the end of each day, [the employer] transported plaintiffs back to the departure points on its buses. [The employer's] work rules prohibited employees from using their own transportation to get to and from the fields." Id.
The Morillion Court found that the plaintiffs were "subject to the control" of their employer during the bus rides to and from the fields. Id. at 587, 94 Cal.Rptr.2d 3, 995 P.2d 139. The compulsory nature of the bus rides was dispositive to finding that time spent on these rides was compensable. Id. The Court found that, in contrast to employees who commute to work on their own, plaintiffs could not decide "when to leave, which route to take to work, and which mode of transportation to use." Id. at 586-87, 94 Cal.Rptr.2d 3, 995 P.2d 139. Morillion made clear, however, that "employers do not risk paying employees for their travel time merely by providing them transportation." Id. at 588, 94 Cal.Rptr.2d 3, 995 P.2d 139. "Time employees spend traveling on transportation that an employer provides but does not require its employees to use may not be compensable as 'hours worked.' " Id. (emphasis added).
In Alcantar v. Hobart Serv. , 800 F.3d 1047 (9th Cir. 2015), the Ninth Circuit applied Morillion to facts similar to the instant case. There, plaintiff brought a putative class action seeking to represent service technicians employed by a commercial food equipment company. The technicians drove to and from customer locations in employer-provided vehicles, "carrying the tools and replacement parts necessary to make repairs." Alcantar , 800 F.3d at 1050. If the technicians commuted in the employer's vehicles, they were compensated "for the time spent driving from their homes to their first assignments and from their last assignments back home, but only to the extent it falls outside their 'normal commute.' " Id. The Alcantar plaintiff claimed that California law requires the employer to compensate technicians for the entire duration of the commute. Id.
The Ninth Circuit ruled that, in order for plaintiff to prevail, he must prove both that technicians were required to commute in the employer's vehicles, and that the employer's restrictions during the commute are such that technicians are under the employer's control. Alcantar , 800 F.3d at 1054-55 ("[T]o prevail at trial [plaintiff] must prove not only that [the employer's] restrictions on him during his commute in [the employer's] vehicle are such that he is under [the employer's] control, but also that, despite [the employer's] profession that use of its vehicles is voluntary, employees are, as a practical matter, required to commute in [the employer's] vehicles.")
Alcantar dictates that, in the instant case, Plaintiff can prevail under the "subject to the control of the employer" prong only if he can prove both of the following: (1) the Home Start participants are required to commute in Defendants' vehicles, and (2) Defendants restrict the participants' commute such that the participants are under Defendants' control. Plaintiff cannot prevail on this prong because it is undisputed that Home *888 Start participants are not required to commute in Defendants' vehicles. As discussed above, Defendants have presented evidence showing that the Home Start program was an optional program for Defendants' field technicians. Not all field technicians participated in the program-only 70 to 80% of the technicians working in the Santa Barbara office with Plaintiff opted into the Home Start program. Further, Plaintiff himself admitted that he signed a form on June 23, 2010, titled the "Home Start Selection Option Statement." The form included the following unambiguous statement: "As Home Start is an optional program, any Technician who is part of the Home Start program may opt out of the program for any reason by simply notifying his/her supervisor." Plaintiff testified at his deposition that he agreed with the statement when he signed the form. Because Home Start is an optional program, field technicians could decide, even after starting the program, not to participate and instead commute in their personal vehicles to and from the company depot.
Plaintiff does not dispute the facts showing that the Home Start program was optional. Yet, Plaintiff argues that there is a triable issue of material fact as to whether the Home Start program was optional. (Dkt. 47 [Pl.'s Opposition to Defs.' Motion, hereinafter "Pl.'s Opp'n"] at 9.) In support of this argument, Plaintiff takes issue with a number of declarations that Defendants have submitted from Defendants' field technicians. Defendants have submitted 48 declarations from field technicians, some who participate in the Home Start program and others who do not. (Dkt. 39-2 [Defs.' Compendium of Declarations].) Each declarant indicates that he or she understands the Home Start program to be voluntary. (Id. ) Plaintiff attempts to dispute this evidence. Plaintiff argues that the manner in which a field technician elects to participate in the Home Start program is by checking a box on the "Home Start Selection Option Statement" form, yet 42 of the 48 declarations do not attach the form. (Dkt. 47-2 at 2-3.) Plaintiff also argues that in Plaintiff's own form and one of the declarant's forms, the correct box was not checked off. (Dkt. 47-2 at 3.) Finally, Plaintiff argues that a field technician supervisor testified in his deposition that he does not confirm if any field technician checked the correct box before that technician begins the Home Start program. (Dkt. 47-2 at 4.)
Plaintiff's arguments do not raise a genuine issue of material fact. The field technicians who have submitted declarations state that they understand the Home Start program is voluntary. (See e.g. , Dkt 39-2 at Declaration of Jose Aceves ¶¶ 4-6 ("Since June 2010 (when Home Start started), I have voluntarily chosen using the option of Cox's Home Start program... I have always understood that I can opt out of the Home Start program at any time simply by notifying my manager and then leaving the truck that night with Cox.").) It is irrelevant that some declarants did not attach their "Home Start Selection Option Statement" form, that two field technicians did not check off the "right" box on the form, and that a supervisor does not check these forms. Such facts have no bearing on whether a field technician can decline to participate in the Home Start program and instead commute to and from work in a personal vehicle. Because there is no genuine dispute of material fact that the Home Start program is optional, no reasonable juror could find that class members were "subject to the control" of Defendants on their commutes home.
2. "Suffered or Permitted to Work"
Plaintiff argues that field technicians are also "suffered or permitted to work" on their commutes home such that the commutes constitute "hours worked."
*889 (Pl.'s Br. at 15-21.) In Morillion, the California Supreme Court explained that an employee is "suffered or permitted to work" when the employee is working, but not subject to the employer's control. Morillion , 22 Cal. 4th at 584-85, 94 Cal.Rptr.2d 3, 995 P.2d 139. "This time can include work such as unauthorized overtime, which the employer has not requested or required." Id. at 585, 94 Cal.Rptr.2d 3, 995 P.2d 139. "In all such cases it is the duty of the management to exercise its control and see that the work is not performed if it does not want it to be performed." Id. (citing 29 C.F.R. § 785.13 ).
Plaintiff asserts that field technicians are "suffered or permitted to work" on their commutes home because they transport tools and equipment necessary to perform their jobs. (Pl.'s Br. at 15-21.) There is no dispute of fact that field technicians on the Home Start program visit the company's offices once per week to pick up the equipment and tools necessary to perform the week's work. They then transport the equipment and tools in the company vehicles throughout the entire week, including from the last assignment of each work day to the technician's home.
Defendants argue that Plaintiff's theory been rejected by many courts construing the federal Fair Labor Standards Act (FLSA) and the Portal-to-Portal Act. For example, in Donatti v. Charter Commc'ns, L.L.C. , 950 F.Supp.2d 1038 (W.D. Mo. 2013), a district court in the Western District of Missouri held that merely transporting tools does not change the generally noncompensable nature of commuting time. Donatti involved facts similar to the instant case. The plaintiffs there were technicians employed by Charter, a cable company, who sought compensation under the FLSA and Portal-to-Portal Act for time they spent commuting in Charter-provided vehicles. The court noted that, absent a contract or custom of compensation, commuting is presumptively noncompensable. Id. at 1049 (citing Rutti v. Lojack Corp., Inc. , 596 F.3d 1046, 1057 (9th Cir. 2010) ). The court then ruled that the noncompensable nature of commuting was not transformed by technicians transporting tools on their commute, when the mere transportation of tools did not increase the commute times. Id. at 1051 ; see also Buzek v. Pepsi Bottling Grp., Inc. , 501 F.Supp.2d 876 (S.D. Tex. 2007) (field service technician's commute, during which he carried tools and used a company vehicle, is noncompensable under the FLSA and Portal-to-Portal Act); Reich v. New York City Transit Auth. , 45 F.3d 646 (2d Cir. 1995) (police officers in canine unit, who were required to transport dogs to and from work, were not entitled to compensation for their commutes under the FLSA when transportation of dogs did not involve additional exertion or an increase in commuting time).
The California Supreme Court has cautioned that courts interpreting IWC's regulations should not give deference to case law interpreting the federal statutory scheme of the FLSA and the Portal-to-Portal Act. Morillion , 22 Cal. 4th at 588, 94 Cal.Rptr.2d 3, 995 P.2d 139. The federal statutory scheme differs from the state scheme in a significant manner-"[t]he California Labor Code and IWC wage orders do not contain an express exemption for travel time similar to that of the Portal-to-Portal Act." Id. at 590, 94 Cal.Rptr.2d 3, 995 P.2d 139.
The Court heeds the California Supreme Court's caution and defers to its interpretation of the state statutory scheme when construing whether certain time constitutes time during which an employee is "suffered or permitted to work." Deferring to the state statutory scheme does not dictate a different result from the FLSA cases, however. Morillion 's construction of "suffered or permitted to *890 work" dictates the same holding-that mere transportation of tools and equipment does not transform noncompensable commuting time into "hours worked." Under Morillion , an employee is "suffered or permitted to work" when the employee is working, but not subject to the employer's control. Morillion , 22 Cal. 4th at 584-85, 94 Cal.Rptr.2d 3, 995 P.2d 139. The California Supreme Court held that one such example of this definition is an employee who has not been asked to work overtime but does work after hours. Id. at 585, 94 Cal.Rptr.2d 3, 995 P.2d 139. The court elaborated that it is management's duty to notice and stop any overtime that management does not want performed. Id. Accordingly, the standard of "suffered or permitted to work" is met when an employee is engaged in certain tasks or exertion that a manager would recognize as work. Mere transportation of tools, which does not add time or exertion to a commute, does not meet this standard. If a manager were to prevent the transportation of tools by Defendants' field technicians, the manager would have to prevent the technicians from commuting home altogether. Such a result would be absurd, and indicates that no additional exertion is required of the technicians when they transport tools and equipment on their commutes home.
Principles of statutory interpretation support the conclusion that the "suffered or permitted to work" standard requires that a commuter be engaged in work-related tasks or exertion in addition to mere transportation. "In interpreting regulations, the court seeks to ascertain the intent of the agency issuing the regulation by giving effect to the usual meaning of the language used so as to effectuate the purpose of the law, and by avoiding an interpretation which renders any language mere surplusage." Modern Paint & Body Supply, Inc. v. State Bd. of Equalization , 87 Cal. App. 4th 703, 708, 104 Cal.Rptr.2d 784 (2001) (citing Brewer v. Patel , 20 Cal. App. 4th 1017, 1021, 25 Cal.Rptr.2d 65 (1993) ). Webster's New Collegiate Dictionary defines "work" as "to perform work or fulfill duties regularly for wages or salary," or "to perform or carry through a task requiring sustained effort or continuous repeated operations," or "to exert oneself physically or mentally especially in sustained effort for a purpose or under compulsion or necessity." Work, Merriam-Webster Dictionary (Online ed. 2017), https://www.merriam-webster.com/dictionary/work. An employee therefore "works," in the usual sense of the word, when he or she engages in tasks or exertion to carry out a duty that is generally compensable through wages or salary. Furthermore, Morillion held that the phrase "suffered or permitted to work" is to be construed independently from the phrase "subject to the control of the employer." So, the former phrase must require something beyond the mere status of being under the employer's control-it requires a work-related exertion or the performance of work-related tasks.
It is undisputed that when Home Start participants commute home, they do not engage in any additional work-related tasks and the transportation of tools and equipment does not add any time to their commutes. Accordingly, no reasonable juror could find that the class members here were "suffered or permitted to work" during their commutes home.
V. CONCLUSION
For the foregoing reasons, Defendants are entitled to summary judgment on each of the certified class claims and their motion is GRANTED. Plaintiff's motion for summary judgment is DENIED.

The Santa Barbara Superior Court certified the following class: "All current and former hourly individuals employed by Defendant in the State of California who participated in Defendant's Home Start Program within four (4) years of the filing of the original complaint to the present." (Dkt. 10-6 Ex. 1 at 2.)